## Louis A. Cazenove vs. Pliny Cutler & others.

If a mortgagee of land in Maine, who is in possession for condition broken, require that the mortgagor or his assignee pay more than is legally due, in order to redeem, and it is paid accordingly, for the purpose of preventing a foreclosure, it is such a compulsory payment as entitles the party, who so pays, to recover it back in an action, brought in this State, for money had and received.

In an action by a mortgagor or his assignee, to recover back money overpaid to a mortgagee in possession, in order to prevent a foreclosure, the same legal and equitable rules are to be applied, which are applicable to a settlement of the mortgagee's account, upon a bill in equity brought against him to redeem : And in such action, it is not to be left to the jury, as an open question, whether the mortgagee's charges are reasonable ; that being a question of law, to be decided by the court according to the facts and circumstances to be found by the jury.

Disbursements made by a mortgagee in possession for condition broken, to which the mortgagor or his assignee, with a knowledge or means of knowledge of the facts and circumstances, agrees and consents, are to be deemed reasonable, and must be reimbursed.

The agreement of the agent of the mortgagor or his assignee to the employment, by the mortgagee in possession, of a person to take charge of the mortgaged estate, at a certain rate of compensation, binds the principal so long as the agency continues, and is competent though not conclusive evidence that the same compensation should be allowed for the like services during the residue of the time that the mortgagee retains possession.

ASSUMPSIT for money had and received.

At the trial before *Putnam*, J. it appeared that the plaintiff, on the 5th of October 1837, paid a large sum to the defendants, for the purpose of redeeming an estate in Eastport, in the State of Maine, known as the Salt Works ; the defendants being, at the time of such payment, mortgagees of said estate, and in possession thereof for foreclosure : That the payment was made under protest, and with notice to the defendants that the plaintiff should sue them to recover back the amount unjustly charged, and by him overpaid : That in the defendants' final account as mortgagees, was a charge, which the plaintiff paid in full, of $600 a year, from April 1835 to October 5th 1837, for the salary which the defendants, as mortgagees, paid to Solomon Rice, for custody and care of the mortgaged property, as their agent ; and that there were other charges in said account, for another agent of the defendants, and for costs, fees, executions, compound interest, &c. The plaintiff also claimed to recover back, besides

the charges aforesaid, all sums which the defendants, as mortgagees in possession, might have obtained, by the exercise of due diligence, care and economy, for rent, use and occupation of the mortgaged property.

It appeared that on the 13th of August 1830, said Salt Works were owned by Ezekiel Foster, and cost about $65,000 ; that said Foster, on that day, made the first mortgage thereof to Ezekiel Prince, who duly assigned the same to the defendants ; and that the defendants, on the 11th of October 1834, were put into possession of the mortgaged premises, on a writ of *habere facias possessionem*, which issued on a judgment recovered by them against said Foster, after breach of the condition of said mortgage : That Foster, after making the aforesaid mortgage to Prince, made mortgage deeds of the same and other property to Charles J. Cazenove, and to the plaintiff, respectively, to secure debts due to the firm of Charles J. Cazenove & Co. of which firm the plaintiff was a member : That said Charles J. Cazenove died and said firm failed in 1833 or 1834, and that their property was assigned to Eliphalet Hale : That on the 10th of April 1834, an arrangement was made by indenture by and between said Foster, the plaintiff, as survivor of said firm, the said Hale, assignee, and Ichabod R. Chadbourne, Frederick Hobbs and Jonathan Buck, by which Foster conveyed the Salt Works and other property to said Chadbourne, Hobbs and Buck, in trust, to secure payment of the debts from him to said firm. Among other terms of this indenture, Foster was to remain in possession of the Salt Works, until he should fail to make some one of the payments, which by said indenture he covenanted to make towards a discharge of said debts ; and upon his failure to make any of said payments, said trustees were to enter and take possession of said conveyed property, and to surrender the same, upon demand, to said firm, or to the survivor of them, or their assigns, to be entered upon by them under the mortgage deeds last aforesaid, for the purpose of foreclosure : That on the 15th of November 1834, said Hale gave to the plaintiff a letter of attorney, empowering him to do all acts which said deed of trust might require to be done

by said Hale, and that the plaintiff acted under said letter
That Foster failed to make payment, according to the stipula·
tions of the indenture, and that the trustees took possession of
the Salt Works, on the 9th of December 1834 : That said
Hale, assignee as aforesaid, on the 20th of June 1835, de-
manded of said Chadbourne, Hobbs and Buck, that they should
surrender to him the possession of the property conveyed to
them in trust, which they accordingly so surrendered on the same
day : That said trustees, on the 31st of August 1835, conveyed
the trust estate to said Hale, and the plaintiff gave them a re·
lease of all further claims on them under the trust deed : That
said Hale afterwards made an adjustment of the concerns of the
firm of Charles J. Cazenove & Co. and on the 18th of July
1837 conveyed to the plaintiff the estates which Foster had
conveyed, as aforesaid, by the indenture of April 10th 1834.

The defendants called Frederick Hobbs, one of the trustees
aforesaid, as a witness.  He testified that in February 1834, he
was requested, on behalf of the plaintiff, to demand of Foster
payment of a debt ; that he commenced a suit for the plaintiff
against Foster, and caused the Salt Works, &c. to be attached
that Foster failed in April 1834, and that the witness was em
ployed by the plaintiff to assist in arranging Foster's affairs ; that
Foster, for the purpose of securing the plaintiff, conveyed his
property in trust (as above stated), and that the witness accepted
the trust, and withdrew the attachment and suit : That Solomon
Rice had the care of the Salt Works, at that time, for Foster,
who was left in possession by the terms of the trust deed : That
the witness instituted a suit for the defendants, at their request,
to obtain possession of the Salt Works, for foreclosure ; that
judgment was recovered in that suit, and a writ of *habere facias*
issued thereon, by virtue of which the sheriff delivered posses-
sion to the witness, as attorney of the defendants, on the 11th
of October 1834, as above stated : That said Rice was then on
the premises, representing himself to be there under Foster, and
the witness requested said Rice to take care of the property as
he had done theretofore ; that no agreement was made, at that
time, respecting the sum which Rice should receive for his ser-

vices ; but that, at the opening of the spring of 1835, the witness, after consulting his co-trustees, Chadbourne and Buck, and other persons, on whose judgment he relied, agreed to allow Rice $ 50 per month for his services in taking care of the Salt Works estate, until the 1st of November 1835, or until some other person, having right, should come into possession : That nothing was paid. or agreed to be paid to Rice for his care of the property before this last agreement was made with him : That the witness saw the plaintiff at Eastport, in 1834, and several times afterwards, before September 1836, and that he never objected to the employment of Rice ; that he once casually remarked that he should " not pay Rice that salary," but never said any more on the subject ; and that if the plaintiff had named any competent person, at a smaller compensation, the witness should have immediately adopted his suggestion.

There was much evidence, on both sides, as to the condition of the Salt Works, their exposure to trespassers, the peculiar fitness of Rice to protect them, the practicability of procuring other competent men for a smaller compensation, &c.

The judge instructed the jury, " that the defendants were to be allowed a reasonable sum for care and expenses, and no more ; and that if the plaintiff had paid them more, he could recover it back in this action." The jury returned a verdict for the plaintiff for $ 1057·61, and the defendants moved for a new trial.

*W Gray,* for the defendants.

*Greenleaf & Bolles,* for the plaintiff.

SHAW, C. J. (After stating that it was the opinion of the court that a payment by a mortgagor of more than is due, for the purpose of preventing a foreclosure, is such a compulsory payment, as entitles him to recover it back in an action for money had and received ; that the plaintiff was not confined to the remedy provided by the statutes of Maine ; and that the action could be maintained in this Commonwealth.) This action must proceed upon the same rules, both legal and equitable, upon which an account ought to be settled upon a bill in equity to redeem. The maxim, that he who seeks equity

must do equity, applies to such a case, when tried by a jury in an action by a mortgagor to recover back money, as before a master to entitle a mortgagor to redeem. The court are of opinion that such a case is not to be left to the jury, as an open question, whether the charges of a mortgagee in possession were reasonable; i. e. whether it was reasonable for the mortgagee to have such services done, and whether they were overcharged or not. What is reasonable, in such case, is a question of law, to be decided upon by the court according to the facts and circumstances to be inquired of and found by the jury.

With more particular reference to the present case, and to the large item paid to Solomon Rice, for his care and custody of the property, the inquiry would be, whether the mortgagees, having taken possession to foreclose, and not using or employing the Salt Works, had incurred this expense upon due care, attention and consideration; i. e. not heedlessly or carelessly, but on inquiry, with a view to the situation and condition of the property, the capacity of Rice, and the worth of his services; whether the sum had been actually paid by them, or they had become absolutely liable to pay it — such liability not being dependent on a redemption, or on the event of the mortgagees' receiving the same of the mortgagor, on redemption; whether such expenses were incurred and paid in good faith, without any collusion or sinister purpose, and with a single view to the care and preservation of the property, and not with a view to other profits and advantages : And the jury should be instructed, that if the mortgagees in possession to foreclose — it being doubtful whether the estate would be redeemed or not — upon due consideration purposely incurred this expense for the care and preservation of the mortgaged estate, and actually paid, or became bound to pay, the sums charged for such services, and paid the same, in good faith, for the care, custody and preservation of the property, it was a reasonable charge and should be allowed, although the jury should be of opinion that such services were not necessary, or that they were overcharged; and if no more had been charged in the account, the mortgagor was bound to reimburse it, on redemption, and that the plaintiff could not recover it back in this action.

As it is often a question of difficulty, in such cases, what expenses shall be incurred for the benefit, protection and preservation of the mortgaged property, in which both the mortgagor and mortgagee have an interest — if the mortgagee in possession, and the mortgagor or his assignee, having the immediate right to redeem, consent and agree to any particular measures in this respect, and the expenses attending them, such consent being given with a knowledge, or the means of knowledge, of the facts and circumstances ; the expenses thus incurred must be reimbursed by the mortgagor or his assignee holding the equity, on redemption. Such expense must be considered, in point of law, a reasonable and necessary expense. Conformably to this principle, if Frederick Hobbs was the agent of the holder of the equity of redemption, as it appears by the evidence that he was, at the time that Rice was employed, and to the 31st of August following, at which time the equity of redemption was assigned by Chadbourne and others, trustees, to Eliphalet Hale ; the consent of Hobbs to the employment of Rice, and to the rate at which he was employed by the mortgagees, must be deemed in law to be the consent of the holder of the equity ; and during that period, the employment of Rice must be considered as sanctioned by both parties, and the expense, thus incurred, a reasonable and necessary expense.

If such consent was given by Hobbs, whilst acting as agent of the mortgagor or his assigns, to the employment of Rice, at the salary agreed on, as useful and beneficial for the protection and preservation of the estate, though it is not conclusive, after he ceased to be such agent, yet it is competent and strong evidence of the reasonableness and propriety of the measure afterwards, and after the assignment ; the circumstances of the property remaining the same.

The action for money had and received is an equitable action ; 't is a substitute for an account before a master on a bill in equity to redeem, and is to be tried and decided upon the same legal and equitable principles which govern the taking of such an account.

*Verdict set aside, and a new trial granted.*

[At the second trial, a verdict was returned for the defendants.]